UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

v.   Case No. 8:09-cr-503-T-24-TBM

JERSON MIGUEL IZAGUIERRE-ORTEGA,

_____/

## ORDER

This cause came before the Court at an evidentiary hearing held on December 4, 2009 on Defendant Jerson Miguel Izaguierre-Ortega's Motion to Suppress. (Doc. No. 14.) The Government opposes this motion. (Doc. No. 21.)

**I.  Background**

The following facts were established at the evidentiary hearing: On September 17, 2009, at approximately 2:00 p.m., Corporal Anthony Miller of the Hillsborough County Sheriff's Office ("HCSO") was driving east on 142nd Avenue in an unmarked vehicle on his way to the HCSO District 1 Office located at 14102 North 20th Street in Tampa.[1] As he approached the office, Corporal Miller noticed an individual, who was later identified as Defendant Jerson Miguel Izaguierre-Ortega, walking east on the sidewalk along the avenue near the corner of the Office property. Corporal Miller noticed Defendant stop, hesitate, turn back the way he had

---

[1] It was established at the hearing that this is a high-crime area of Tampa. Corporal Miller testified that he was aware of criminal activity taking place near the District 1 Office. However, he had not received any report or information that he should be on the lookout for Defendant, or for someone matching Defendant's description.

come, and stop again, doing what Corporal Miller described as the "Ickey shuffle."[2]  Corporal Miller looked to where Defendant was looking as he hesitated and noticed that a deputy sheriff had pulled up to the gas tank located on the District 1 Office property to pump gas into her patrol car.  Because of Defendant's hesitation and shuffle upon noticing the deputy sheriff, Corporal Miller became suspicious that Defendant "did not want anything to do with law enforcement" because, Corporal Miller suspected, he was either carrying drugs or a gun or was wanted for arrest.

Corporal Miller then rolled down his passenger side window, identified himself to Defendant, showed his badge to Defendant, and asked Defendant to stay there because he wanted to talk to him.  Defendant agreed.  Corporal Miller then pulled into the District 1 Office lot and parked his car near the deputy's patrol car.  Corporal Miller informed the deputy that he wanted to talk to the Defendant on the sidewalk and asked for her assistance.  However, when Corporal Miller looked to where he had left Defendant, no one was there.  Corporal Miller then looked down the street and saw Defendant interacting with two to four individuals about 35 feet past where he had asked Defendant to wait.

Corporal Miller yelled, "Hey," but Defendant did not respond.  Corporal Miller walked out onto the sidewalk and yelled, "Hey, come here," or similar words.  At that point, Defendant disengaged from the other individuals and walked toward Corporal Miller.  Corporal Miller asked Defendant what he was doing, and Defendant replied, "nothing."  Corporal Miller asked

---

[2]Corporal Miller testified that the "Ickey shuffle" was a famous touchdown celebration performed by former National Football League player Elbert "Ickey" Woods of the Cincinnati Bengals.  Woods would shuffle his feet to the right and left, before spiking the ball.  Corporal Miller testified that, although Defendant's hesitation *resembled* the "Ickey shuffle," Defendant took only a few steps in either direction.

2

for Defendant's name, and he responded, "Yerson." Corporal Miller next asked Defendant for his age, to which Defendant responded, "18." Finally, Corporal Miller asked Defendant what year he was born, and Defendant responded, "1989." At this point, Corporal Miller concluded that Defendant was lying about his age because he could not be both 18 years old and born in 1989.

Corporal Miller told Defendant that he suspected Defendant was lying. He warned Defendant that he was going to advise Defendant of his *Miranda* rights, and if Defendant lied again, he would arrest Defendant for obstruction. After advising Defendant of his *Miranda* rights, Corporal Miller repeated the questions. This time, Defendant told him that his name was Miguel Velasquez. When Corporal Miller inquired which name was correct–Yerson or Miguel–Defendant responded, "Miguel." Corporal Miller again asked how old Defendant was, to which Defendant responded, "18." When asked again what year he was born, Defendant started to visibly count, and Corporal Miller told Defendant that he should be able to remember his date of birth without counting. Eventually, Defendant responded, "1989." Corporal Miller testified that he asked Defendant a few more questions, and Defendant gave conflicting answers.[3]

Corporal Miller then arrested Defendant for obstruction without violence, in violation of Florida Statute section 843.02. He then conducted a pat-down search of Defendant and discovered a .22 caliber bullet in Defendant's right front pants pocket. Corporal Miller suspected that Defendant was possessing a firearm when Corporal Miller initially encountered

---

[3]At all times, Corporal Miller spoke to Defendant in English, and Defendant responded in English. At the suppression hearing, however, Defendant required the services of a Spanish interpreter.

Defendant walking down the street, and that Defendant gave the firearm to the individuals he was interacting with, while Corporal Miller parked his car. This suspicion, however, was never confirmed by any evidence.

While in custody, it was determined that Defendant had previously been deported. On September 29, 2009, U.S. Immigration and Customs Enforcement ("ICE") took Defendant into custody and interviewed him. During that interview, after Defendant again had received a *Miranda* warning, Defendant made incriminating statements regarding his presence in the United States and his conduct on September 17, 2009.

Thereafter, Defendant was charged with being an illegal alien in possession of one round of .22 caliber ammunition, in violation of 18 U.S.C. § 922(g)(5)(A) and 924(a)(2) (Count 1), illegally reentering the United States after being deported, in violation of 18 U.S.C. 1326(a) and (b)(2) (Count 2), and illegal entry into the United States, in violation of 18 U.S.C. 1325(a)(1) and 1329.

## II.   Discussion

Defendant moves to suppress the .22 caliber bullet, and any incriminating statements that he made regarding the bullet on either September 17, 2009, or September 29, 2009, under the Fourth Amendment. Defendant contends that this evidence must be suppressed as "fruits of the poisonous tree" because Corporal Miller lacked reasonable suspicion to conduct the stop.[4]

---

[4]Defendant also moves to suppress any evidence that relates to his identity or immigration status. He contends that such evidence would not have been obtained if it had not been for his unconstitutional seizure and arrest. Such identity-related evidence, however, "is never suppressible when it is offered only to prove a defendant's identity," regardless of whether the evidence was discovered during an lawful search. *United States v. Lopez-Garcia*, 565 F.3d 1306, 1320 (11th Cir. 2009) (citing *United States v. Farias-Gonzalez*, 556 F.3d 1181 (11th Cir. 2009)). Accordingly, Defendant's motion must be denied to the extent that he seeks to suppress

A law enforcement officer "may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S. Ct. 673, 675, 145 L. Ed. 2d 570 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30, 88 S. Ct. 1868, 1884, 20 L. Ed. 2d 889 (1968)). "While 'reasonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop." *Illinois*, 528 U.S. at 123, 120 S. Ct. at 675-76. The officer conducting the stop "must be able to articulate more than an 'incohate and unparticularized suspicion or hunch' of criminal activity." *Id.* at 123-24, 120 S. Ct. at 676 (quoting *Terry*, 392 U.S. at 27, 88 S. Ct. at 1883)). "A reasonable suspicion of criminal activity may be formed by observing exclusively legal activity." *United States v. Gordon*, 231 F.3d 750, 754 (11th Cir. 2000).

Here, the Government contends that Corporal Miller's suspicions were reasonable because he witnessed Defendant hesitate and shuffle when Defendant unexpectedly saw a deputy sheriff's patrol car pull up to the gas tank at the District 1 Office, and because Defendant walked 35 feet away from where he agreed to wait so that he could interact with the other individuals. According to the Government, these facts, combined with the additional facts that this incident occurred in a high-crime area and in a specific location where Corporal Miller knew criminal activity was ongoing, are sufficient to establish that he had a reasonable suspicion of criminal activity.

---

his identity or any identity-related evidence discovered as a result of the September 17, 2009 seizure and arrest.

5

Looking at the totality of the circumstances, the Court disagrees. Although the fact that the stop occurred in a high crime area is a "relevant contextual consideration in a *Terry* analysis," "[a]n individual's presence in a area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime." *Illinois*, 528 U.S. at 124, 120 S. Ct. at 676. Although this incident occurred in an area of Tampa known for a high volume and density of criminal activity, Corporal Miller encountered Defendant in the middle of the afternoon and on the sidewalk adjacent to the HCSO District 1 Office.

Moreover, Defendant's conduct–neither by itself, nor in combination with the fact of his presence in a high crime area–was sufficient to arouse a reasonable suspicion in Corporal Miller that criminal activity was afoot. Corporal Miller testified that Defendant hesitated and shuffled upon noticing that a nearby deputy sheriff had pulled up to the gas tank to pump gas into her patrol car. Defendant did not flee or take any other action to indicate he was avoiding the police. The fact that Defendant walked 35 feet away from where Corporal Miller first encountered him was also not enough to arouse a reasonable suspicion. Defendant remained within view and within earshot of Corporal Miller, and when Corporal Miller yelled to him, "Hey, come here," Defendant disengaged from the other individuals and walked toward Corporal Miller. Defendant's minimal reaction to encountering the police simply does not rise to the level of "nervous, evasive behavior" that courts have found to be pertinent in determining reasonable suspicion. *Id.* at 124, 120 S. Ct. at 676 (ruling that unprovoked flight upon noticing the police was "the consummate act of evasion" and was sufficient to arouse reasonable suspicion, when it occurred in a high-crime area).

### III. Conclusion

The Court concludes that Corporal Miller did not have a reasonable, articulable suspicion that Defendant was involved in criminal activity, which would allow him to conduct the stop. Accordingly, Defendant's Motion to Suppress (Doc. No. 14) is **GRANTED** as to the bullet and any statements that Defendant made on September 17, 2009 regarding the bullet.

However, the motion is **DENIED** as to any statements Defendant made regarding the bullet during the September 29, 2009 interview with ICE. Defendant's statements made during the September 29, 2009 interview were made twelve days after his arrest, and therefore were too attenuated in time to be fruits of the poisonous tree. In addition, they were made after Defendant had again received a *Miranda* warning. Finally, the motion is **DENIED** as to any identity-related evidence, as previously explained in footnote four.

**DONE AND ORDERED** at Tampa, Florida, this 7th day of December, 2009.

Copies to:
Counsel of Record

SUSAN C. BUCKLEW
United States District Judge